OPINION. TURNER, Judge: Beginning in 1926, the petitioners have built up a very profitable business, which consists of running and establishing oil and gas well elevations for subscribing oil companies. That the business is essentially a personal service operation is indicated not only by the type and character of work done, but by the fact that the net profits are consistently several times the capital invested. In the early years petitioner Laughlin did considerable of the field work himself, but in more recent years the business has expanded to such an extent that such work is done chiefly by technicians who are employed to work from field offices in various of the eleven states in which the business is conducted. In circulars distributed among subscribers ai)d prospective subscribers, the operations are portrayed as one venture, under the name and style of Laughlin-Simmons & Co., Tulsa, Oklahoma. According to their books of account, however, and certain formal documents executed by the petitioners and their wives, the operations are divided into three partnerships; one such partnership, covering the operations in the State of Kansas, being designated Laughlin, Simmons & Co. of Kansas and purporting to have Laughlin, Simmons, and Mrs. Laughlin as partners; another, covering Oklahoma operations, being designated Laughlin, Simmons & Co. and purporting to have the same three individuals as partners; and the third being designated Laughlin-Simmons & Co. of Texas and purporting to have Laughlin, Mrs. Laughlin, Simmons, and Mrs. Simmons as partners. In Laughlin-Simmons & Co. of Texas, in which the wives of both petitioners are claimed to be partners, the interests of the wives therein sprang from gifts claimed to have been made by the petitioners to their respective wives. In the case of Simmons and his wife, the transaction took the form of dissolution of an existing partnership between the petitioners, a gift by Simmons of an undivided one-half interest in the fixed assets of the business distributable to him, and the execution of a new partnership agreement naming Simmons and his wife, share and share alike, as party of the first part, and Laughlin as party of the second part. In the case of Laughlin and his wife, the transaction took the form of a letter by Laughlin to Mrs. Laughlin purporting to give her “a one-eighth (%th) interest in the whole of the Partnership of Laughlin-Simmons & Co. of Texas,” concurred in, on its face by Simmons and Mrs. Simmons. In the case of both Mrs, Simmons and Mrs. Laughlin, it was understood that the assets or property involved was to remain in the business. Neither of them made any contribution of their separate funds to capital. It is contended by the petitioners, however, that their wives did in truth and in fact become partners in the venture and that this conclusion is supported not only by contributions to capital by means of the purported gifts, but through the actual rendition of services in carrying on the operations of the business. In the case of Mrs. Laughlin, it is apparent that her activities did not change after the purported gift; that these activities were in the main social activities and, in so far as they related to the business at all, were of the same nature and character as those which might reasonably be expected of any woman having an interest in the success of her husband’s business endeavors. She accompanied Laughlin on his trips to the field offices and while there talked with the managers and their wives. According to her testimony, she made four to six such trips in 1940, after she purportedly became a member of the Texas partnership. She had also, according to her testimony, made four to six such trips in 1939, before the purported gift. Over certain periods of time she attended conventions involving the oil industry and indulged in the social activities, and while attending one convention at which Laughlin-Simmons & Co. had a booth she spent some time in the booth. At other times she and Laughlin entertained in their home various oil men and their wives and, in some instances, various field managers and their wives, and on some occasions she- discussed with Laughlin the merits of some employee or prospective employee. Considering the nature and character- of the business, we are unable to find in these activities a sufficient basis for resting the conclusion that Mrs. Laughlin was a member of the partnership upon the services rendered by her. It is true that the books of account of the Texas operations were kept in a manner to show that, from and after the purported gift in January of 1940, Mrs. Laughlin was the owner of a one-eighth interest in the partnership and that distributions of partnership profits were made on that basis by checks drawn in her name. It is also true that she reported such profits as her income in her 1940 return. It is to be noted, however, that the checks drawn covering her distributive share of the profits were deposited by someone other than Mrs. Laugh-lin in the joint bank account which she and Laughlin had in the First National Bank of Dallas, Texas. The Laughlin household expenses for both 1939 and 1940 were paid by Mrs. Laughlin out of her personal bank account in Oklahoma City. After the close of each of those years Laughlin purportedly reimbursed her for those expenditures, but in each instance the check drawn for the purpose of making the said reimbursement was drawn on the joint bank account of Laughlin and Mrs. Laughlin in the Dallas bank. We are not advised as to •what became of other moneys deposited in that joint bank account, but we do know that it was “just fairly recently” that Mrs. Laughlin ever drew a check on the said account. Such being the facts, we are unable to conclude, as the petitioners would have us do, that Mrs. Laughlin was a partner in their Texas operations during the year 1940, but, to the contrary, conclude and hold that the income therefrom, to the extent of one-half, was the income of Laughlin. See and compare Earp v. Jones, 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764; Mead v. Commissioner, 131 Fed. (2d) 323; Schroeder v. Commissioner, 134 Fed. (2d) 346; Francis Doll, 2 T. C. 276. In the case of Mrs. Simmons the situation is much the same, the only substantial difference being that Mrs. Simmons did do some office work in the headquarters office in Tulsa, Oklahoma, for the operations as a whole. We are not advised whether she performed such services after her marriage to Simmons and before the purported gift; neither are we advised as to what portion of the work, if any, done by her had to do with Laughlin-Simmons & Co. of Texas, of which she is claimed to be a member. There is no claim that she had anything to do with keeping the books of account. Further, we are advised that in case of the Texas company operations the reports to the oil companies were mailed directly from the field offices and were not handled, except for filing, in the Tulsa office. In some instances some of the data on the various reports were transferred to maps in the Tulsa office, but whether or not that occurred with respect to the reports in the so-called Texas operations, we do not know. Neither does it appear that Mrs. Simmons had anything to do with the transferring of such data. Her other activities, as in the case of Mrs. Laughlin, were of a social nature and, in so far as they had a bearing on the oil and gas well elevation business, were no more than might reasonably have been expected from any wife having an interest in the activities of her husband. As in the case of Mrs. Laughlin, we do not find in the record here a sufficient basis in fact for concluding that Mrs. Simmons was a member of the partnership styled Laughlin-Simmons & Oo. of Texas, and hold that one-half of the income from its operations was properly determined to be the income of petitioner Simmons. While it is true that Mrs. Laughlin owned or held 10 percent of the stock of Laughlin-Simmons & Co., the Oklahoma corporation, and the partnerships, Laughlin, Simmons & Co. and Laughlin, Simmons & Co. of Kansas, after their formation, performed the services for Oklahoma and Kansas subscribers which had theretofore been performed by the corporation, the evidence in our opinion refutes, rather than supports, the claim that the partnership income allocated to her was her income. In the first place, the business carried on was a personal service business and, though neither Laughlin nor Simmons any longer actually ran the well elevations, there can be no doubt from the evidence of record that the distributable income with which we are here concerned was, in the main, attributable to the services rendered by them. They organized, planned, and managed the business and, to the extent necessary, instructed and trained the employees in the duties they were to perform. Some indication of the force of their services in the production of income can be had by comparing gross income, operating expenses, the net profits remaining, and the amount of capital invested, remembering at the same time that the operating expenses shown included the salaries and wages of the men who did run the well elevations, but no salaries or compensation for Laughlin and Simmons, and that such capital as was used in the business was invested chiefly in furniture and fixtures, technical instruments and equipment used in rendering the services sold to subscribers, and automobiles used in transporting personnel. In the second place, it is noticeable that, except for the keeping of book accounts and the reporting of the income for income tax purposes, little regard was had for the niceties and formalities, to say nothing of the actualities, which would indicate that Mrs. Laughlin had the interests in the businesses contended for. It is said, for instance, that she had an interest of 10 percent in the Oklahoma partnership and of 25 percent in the Kansas partnership, and yet the formal partnership agreements fail to show that she had any interest whatever in those partnerships separate and apart from the interest of Laughlin, her husband. It is also said that since the Oklahoma and Kansas partnerships succeeded to the Oklahoma and Kansas business of the corporation, the interests in the partnerships were hers because of her ownership of 10 percent of the stock of the corporation, and yet in 1934, when the business then being conducted by the corporation in the State of Texas had increased substantially, Simmons and Laughlin, without any showing that they had consulted Mrs. Laughlin, separated the Texas business of the corporation from its other business and set the Texas business up as a partnership of their own; and there is no claim that Mrs. Laughlin at any time thereafter had any interest in the Texas operations until the purported gift in 1940. An explanation offered was that allowance was made for such disregard of her rights by giving her, at the time the Kansas partnership was created, a 25 percent interest, instead of a 10 percent interest, in the Kansas operations, although it is admitted that no effort was made to determine the comparability of a 25 percent interest in the Kansas operations with a 10 percent interest in the Texas operations, and we do know that in the years before us 10 percent of the Texas profits was substantially greater than 25 percent of the Kansas profits. It does appear that Mrs. Laughlin did purchase in her own name some United States savings bonds and postal savings certificates, and it probably is true that the profits of the businesses in which it is claimed she was a partner did constitute the original source of at least some of the funds used in making those purchases. But it also appears that she had little actual knowledge either as to the amounts of or the time, method, or manner of making the distributions. Some of the profits undoubtedly found their way by direct deposit or transfer into her individual account, in an Oklahoma City bank. Some of the profits, she knew, were deposited in the joint account which she had with her husband in a Dallas bank, but until “just fairly recently” she had done no checking on that account. In that connection it is interesting to note that, as evidence that none of Mrs. Laughliirs purported share of the partnership profits was used to pay or satisfy the personal obligations of petitioner Laughlin, checks drawn by Laughlin on the Dallas account, half of which it is claimed belonged to her, were introduced to show that he had reimbursed her for both the years 1939 and 1940 for household and living expenses which had been paid by her. The petitioner places great reliance on the fact that Mrs. Laughlin contributed $500 to the capital of Simmons-Laughlin & Co., the corporation, and, on the first impression, it might seem that that fq,ct brings this case within the rule of Humphreys v. Commissioner, 88 Fed. (2d) 430, reversing 33 B. T. A; 1081. The facts in the two cases, however, are quite different. In the Humphreys case there was a direct contribution of capital by the wives to the partnership venture. The amounts contributed were substantial and there was no showing or claim that the husbands were in any way the source of funds contributed. In the instant case it is apparent that at all times capital played a very minor part in the businesses carried on, and, while we consider it of passing interest only, some doubt might even be expressed as to whether the relationship of husband and wife rather than the investment of funds was not the controlling consideration in Mrs. Laughlin’s ownership of the Oklahoma corporation stock. A prior gift by Laughlin to her was, so far as appears, the source of the $500 advanced by her; and during the life of the corporation she had received as or under the guise of salaries from $3,000 to $3,600 per year, but there is no information as to the services for which the claimed salaries were paid, and there is no reason to believe that they were any more substantial than the services rendered by her during the taxable years for the partnerships. We have already noted the apparent disregard by Laughlin and Simmons, at the time of the formation of the Texas partnership to take over the Texas business, of any interest Mrs. Laughlin may have claimed in such business by reason of her ownership of stock in the corporation. Previously noted also was the explanation that the disregard of her rights in the Texas business was the occasion for increasing her interest in the Kansas partnership from 10 to 25 percent, but with it was the admission that no effort was made to determine the relative values of the interests in the Kansas and Texas businesses. Furthermore, if capital had been of material importance in the operation of the businesses and in the production of income, and the funds used and dispensed by Mrs. Laughlin were her own funds, she did not draw on the corporation for her capital interest in the Kansas partnership, but paid $232.87 in cash, that amount being 25 percent of the total capital invested in the Kansas partnership. All of these facts or incidents, it would seem, may be taken as some indication that the parties themselves did not consider the ownership of stock in the prior corporation of controlling importance, and make this case distinguishable from Humphreys v. Commissioner, supra. In Lucas v. Earl, 281 U. S. 111, it was held that income is taxable to him who earns it, and in Earp v. Jones, supra, an attempt to avoid that rule by indulging in partnership formalities was held to be of no avail. In the instant case, we do know from the evidence that one of the motives for indulging in the partnership form of operation was the saving of income taxes. We also know that capital was not a factor of any moment in the production of income and that the income did result from services rendered by Laughlin and Simmons, for whom no salary or compensation allowance was made, and by the employees, whose salaries or compensation was paid currently from the income produced. We accordingly hold that the respondent did not err in his inclusion in the income of Laughlin of that part of the income of Laughlin, Simmons & Co. and Laughlin, Simmons & Co. of Kansas, which had been reported by Sarah Laughlin as her income. Decisions will he entered, under Rule SO. ■